IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY ATCHISON and )
LINDA COTTON, )
 )
      Plaintiffs, )
 )
v. ) CIVIL ACTION NO. CV-01-PWG-0880-S
 )
ELECTRONIC DATA SYSTEMS )
CORPORATION, )
 )
      Movant. )

FILED
03 MAR 31 PM 3:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 31 2003

## MEMORANDUM OF DECISION

This matter is before the undersigned magistrate judge for consideration of Defendant's motion for summary judgment (Rule 56, *Federal Rules of Civil Procedure*), pursuant to the provisions of 28 U.S.C. § 636(c) and consent by the parties. Plaintiffs have filed a brief in opposition. As more fully set out below, Defendant's motion for summary judgment is GRANTED.

## THE COMPLAINT

Gregory Atchison and Linda Cotton ("Plaintiffs") claim that their employer, Electronic Data Systems Corporation ("EDS"), is liable for damages under Title VII, codified at 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, for racial discrimination visited upon them by their supervisor, Roy Thom. Plaintiffs have made the following claims against EDS: 1) a promotional claim, asserting that Plaintiffs have worked for the company for a number of years (Atchison 3 years, and Cotton 2 years) in mainframe as computer operators and have been denied the same promotional advances as white employees. Plaintiffs contend white employees have been advanced to these positions without necessary and proper training, and into positions which were not generally posted. Plaintiffs state that they were not considered for these positions. Plaintiffs also allege an equal pay claim, asserting that although they have performed jobs identical to those of white employees, plaintiffs

26

have not received comparable wages to those paid to white employees for the same work. Plaintiffs allege an unlawful disparity of terms and conditions of employment. Plaintiffs allege that they have not received the same training as white employees, were discriminated against in training, that EDS has provided training to similarly situated white employees and then promoted these employees over Plaintiffs. Plaintiffs aver that they were to have received training in the summer of 2000, but the training was subsequently cancelled. Plaintiffs contend that when the training program was reinstated, white employees were selected to train in the place of Plaintiffs. Later several additional white employees received training and eventual promotion over Plaintiffs. Plaintiffs allege an overtime pay claim, asserting that they have not been paid for overtime that they worked. Plaintiffs claim that they have suffered mental anguish and other damages as a result of this illegal discrimination by EDS.

RELEVANT UNDISPUTED FACTS

Following are the facts significant for decision in this case that are either actually undisputed, or if disputed, viewed in a light most favorable to the non-moving Plaintiffs.

### General Facts

Plaintiffs are African-American citizens and residents of Alabama. EDS is a privately owned corporation located in Jefferson County on Data Drive in Hoover, Alabama. EDS has approximately 95 employees in the Birmingham area, Hoover location. Darren Kerns is the Director of Operations for EDS in Birmingham. Plaintiffs were employed with EDS working as computer operators in the mainframe department in April of 1998 and March of 1999, respectively. Peggy Nuckols was their manager from the date Plaintiffs were hired until she took an early retirement in the summer of 1999. Nuckols reported to the Operations Manager, Gary Whitman, who reported directly to Kerns. When she retired, Kerns selected Roy Thom, a white employee, to replace Nuckols as the second shift

manager. Thus, after the summer of 1999 both Plaintiffs reported directly to Thom as their supervisor.

In 2000, in response to inquiries, Kerns distributed an e-mail specifying requirements for advancement within EDS. Those requirements included full training in the current position occupied and the commencement of upper level training. EDS also had in place a policy of continuous training and education, with a system in place for promotion in which the employee must complete specific regimens of curriculum training to be considered for a promotion out of an entry-level position. This policy mandated promotion and reward based in performance, rather than seniority or time in grade. In addition, in order to move from an entry-level position an employee must apply for and be accepted for another position. Initially, to apply for a promotion, the employee was required to seek the approval of the immediate manager, who in turn would forward the resumes of only qualified candidates to the hiring managers. Later the policy was changed to allow the employee to apply directly for the position sought by forwarding his own resume to the appropriate hiring manager. EDS posted via the company intranet available training classes as well as current job openings.

Plaintiffs are African-American, senior, entry-level employees at EDS. Each has participated in various training programs within the company. Kerns temporarily placed a moratorium on training from mid-October 1999 thru February of 2000 due to customer complaints of poor service. Plaintiffs subsequently completed the training for their current positions, as well as some upper level training. Plaintiffs have each rotated through different shifts within the company. They claim that there are no white entry-level employees that have been in the position longer than they have, and many white employees have hired in and transferred out of entry-level. Plaintiffs also claim that they have asked repeatedly to be moved out of their entry-level positions.

### Roy Thom

Thom was the Plaintiffs' manager during the period of alleged racial discrimination. The plaintiffs claim that Thom differentiated between his employees in the manner in which he addressed them. He spoke "down" to the African-American employees and was friendlier with the white employees. At one point, Atchison overheard Thom refer to Atchison as a "nigger." In November of 2000, Atchison applied to Thom for a Local Systems Administrator (L.S.A.) position by submitting a resume to Thom. Atchison asserts that Thom denied Atchison access to the application process by not forwarding his resume on that occasion. Thom told Atchison that he would not forward the resume at that point because Atchison had yet to complete the training curriculum. Atchison claims that Thom had control over the curriculum, that it was not stable, and that but for a single component, Atchison was fully trained.

Cotton began working in the mainframe after Atchison. She was the next senior, entry-level employee there. She claims that although she was qualified, Thom also denied her promotions by refusing to forward her resume. Thom transferred Cotton to the third shift in May of 2000. She first learned of the transfer through the break-room gossip of fellow employees rather than directly from Thom. Cotton claims that she was dissatisfied with the transfer, but concedes that she was on notice from the beginning that EDS operators can be required to work any shift. Cotton was asked to work on the third shift for a period of four months.

Both Plaintiffs claim to have seen several white employees given preferential treatment, including permission to complete training before the Plaintiffs. Each Plaintiff maintains that he or she simply could not be less competent than all of the other white employees promoted during their tenure. Plaintiffs contend that while technically possible, it would have been futile to seek promotion without the recommendation of the manager and in light of his disapproval.

•

APPLICABLE LAW

I.    SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment should only be granted when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. When the court examines a motion for summary judgment, the evidence must be viewed in a light most favorable to the non-moving party and all reasonable inferences drawn there from should be in favor of the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is incumbent upon the party bearing the burden of proof at trial "to make a showing sufficient to establish the existence of [all] element[s] essential to that party's [*prima facie*] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, if the plaintiff is unable to carry this burden initially and produce evidence supporting each essential element of his case, the moving party is entitled to judgment as a matter of law. *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

II.   TITLE VII AND THE *McDONNELL DOUGLAS* STANDARD

The United States Supreme Court set out the standard for establishing a *prima facie* Title VII racial discrimination case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). The elements that must be proven are: 1) that the plaintiff belongs to a racial minority (protected class), 2) that the plaintiff was qualified and applied for the position sought, 3) that the plaintiff was rejected despite his qualifications, and 4) that the employer then sought (and / or hired) someone outside of the protected class who was equally or lesser qualified than the plaintiff for the position. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

A.   Plaintiffs are Within the Class of Persons Entitled to Statutory Protection

It is undisputed that Plaintiffs are African-Americans. The first element of the *McDonnell Douglas* standard is satisfied as Plaintiffs are members of a protected class.

B.   Plaintiffs were Qualified and Applied for the Position Sought

It is undisputed that in order to qualify for a promotion out of mainframe at EDS, employees must complete a range of training programs. Plaintiffs participated in these various training programs, but claim that their training was attenuated because of interruptions in the program. Nonetheless, both Plaintiffs eventually completed the training. For the purposes of this order it appears that Plaintiffs were qualified for promotion.

It is also undisputed that at one stage the employees were required to seek the approval of their immediate manager when applying for a promotion, and the manager would forward resumes of qualified candidates to the hiring managers. The policy was changed to allow the employee to apply directly for the position sought by forwarding a resume to the appropriate hiring manager. In the instant case, EDS disputes the assertion that Plaintiffs ever sought positions other than mainframe, entry-level computer operator positions. Plaintiffs, on the other hand, claim that they had applied for and been denied other positions. Atchison claims that he put in applications for (or expressed an interest in) two other positions by submitting a resume to his supervisor, Roy Thom. He was told by Thom that he was not qualified due to a lack of training. Cotton claims that on two separate occasions she applied for a T.C.S. position but was denied the position. EDS asserts that the T.C.S. position is also an entry-level position, just as Cotton's current computer operator position, and that a move into the T.C.S. position would have been a lateral move at best. Neither party offers proof beyond these general assertions. The second element of *McDonnell Douglas* is met for the purposes of summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

C.   Plaintiffs were Rejected Despite Qualifications

Again, it is undisputed that the requirements to qualify for advancement within EDS included being fully trained in the current position, and initiation of training for the upper level position sought. Plaintiffs assert, and EDS does not dispute, that they are now both fully trained in their current positions, and have at least some training for upper level positions. Additionally, Plaintiffs assert that they have witnessed, and been told by others, that completion of upper level training is not necessary for transfer out of the entry-level position. EDS notes in response that not all transfers are in fact *promotions*, and that many positions in addition to mainframe within EDS are classified or considered as entry-level positions. These transfers cannot be construed as "promotions." A legitimate inference remains, however, based upon the existing evidence that Plaintiffs were rejected despite their qualifications, and/or that the training was, under some circumstances, actually unnecessary for promotion. Plaintiffs have satisfied the third prong of the *McDonnell Douglas* test.

D.   The Employer then Sought (and/or Hired) Someone Outside the Protected
     Class Who was Equally or Lesser Qualified than the Plaintiff for the Position

In *Anderson v. Liberty Lobby, Incorporated,* the Supreme Court held:

> summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

477 U.S. 242, 247-248 (1986).

Although Plaintiffs are entitled to all inferences in their favor in the face of summary judgment, they must nonetheless produce evidence establishing a legally relevant factual issue

sufficient to create a reasonable jury question (i.e. a "genuine issue of material fact"). *See generally, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Plaintiffs state generally that they witnessed individuals hired in and transferred out of mainframe with and without the proper training. After discovery Plaintiffs do not, however, specifically identify a single individual hired for a position sought by one of the Plaintiffs equally or less qualified than Plaintiffs. Plaintiffs do not identify anyone who was promoted. Indeed, although Atchison identifies 15 people who were <u>trained</u> before him on the control desk (a task necessary for upper level training), he does not name anyone who was <u>promoted</u> over him in a discriminatory manner because of the training. Neither Plaintiff identifies the new position locations, nor the qualifications or lack of qualifications, of these unidentified employees who are said to have been promoted. As EDS correctly notes, without the names of specific individuals Plaintiffs contend were promoted in a discriminatory manner, or a reference to the position to which the transfer was claimed to have occurred, EDS cannot offer a non-discriminatory explanation for the alleged employment action.

Plaintiffs' claims before this court are reduced to conclusory allegations based upon speculation. Plaintiffs simply cannot establish a *prima facie* claim of racial discrimination in the absence of specificity. Without a *prima facie* showing, the Motion for Summary Judgment of EDS is due to be GRANTED. A separate order consistent with this memorandum of opinion will be entered.

DONE this the 31st day of March, 2003.

                                                        PAUL W. GREENE
                                                        UNITED STATES MAGISTRATE JUDGE